# Illinois Official Reports

## Appellate Court

---

### *People v. Guzman-Ruiz*, 2014 IL App (3d) 120150

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOVITA GUZMAN-RUIZ, Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-12-0150 |
| Filed | March 6, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The denial of defendant's postconviction petition alleging that her counsel failed to advise her that she would be deported if she was convicted of unlawful possession with intent to deliver more than 2,000 grams but less than 5,000 grams of cannabis was reversed and remanded for further proceedings, regardless of the fact that the trial court provided admonishments about the possibility of deportation, since her counsel's erroneous advice prejudiced her where she pled guilty and was sentenced to a short term, but was deported shortly after her release from jail. |
| Decision Under Review | Appeal from the Circuit Court of Rock Island County, No. 09-CF-1097; the Hon. F. Michael Meersman, Judge, presiding. |
| Judgment | Reversed and remanded. |

Counsel on
Appeal

Santiago A. Durango (argued), of State Appellate Defender's Office, of Ottawa, for appellant.

John L. McGehee, State's Attorney, of Rock Island (Justin A. Nicolosi (argued), of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel

JUSTICE WRIGHT delivered the judgment of the court, with opinion.
Justice O'Brien concurred in the judgment and opinion.
Justice Schmidt dissented, with opinion.

## OPINION

¶ 1    Defendant Jovita Guzman-Ruiz appeals from the denial of her petition for relief under the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq*. (West 2008)) following a third-stage evidentiary hearing after the trial court found she was not prejudiced by counsel's failure to inform her that deportation was likely following a guilty plea admitting she unlawfully possessed several pounds of cannabis. We reverse and remand the matter for further proceedings.

¶ 2                                    FACTS

¶ 3    On December 15, 2009, the State charged defendant by information with one count of unlawful cannabis trafficking (720 ILCS 550/5.1(a) (West 2008)), a Class 1 felony. Count II alleged the offense of unlawful possession with intent to deliver more than 2,000 grams but not more than 5,000 grams of cannabis (720 ILCS 550/5(f) (West 2008)), also a Class 1 felony. On June 8, 2010, defendant entered into a fully negotiated guilty plea by pleading guilty to count II as charged for the unlawful possession of more than 2,000 grams but not more than 5,000 grams of cannabis with intent to deliver.

¶ 4    The factual basis provided by the State to the court established that on December 14, 2009, defendant signed for, and accepted, a package addressed to Oscar Guzman, at her residence. Defendant did not open the package or examine the contents, but immediately placed the unopened package under a blanket in her garage. Upon execution of a search warrant, police discovered the hidden package in the garage and found it to contain 10 pounds of cannabis. After being informed of her *Miranda* rights, defendant admitted her cousin Oscar paid her $200 to accept his packages and then contact Oscar to pick up the packages from her home. According to the factual basis, defendant knew Oscar distributed cannabis. The trial court then accepted defendant's guilty plea, entered judgment on count II, and dismissed count I.

¶ 5    The court informed defendant, that pursuant to her plea of guilty to count II, she was sentenced to 180 days of incarceration and 30 months of probation. After admonishing defendant regarding her right to appeal, the following discussion took place:

"THE COURT: Now, I didn't ask her before, but I probably should have. Is she a–Is she a United States citizen?

THE DEFENDANT: No.

THE INTERPRETER: No.

THE COURT: Okay. Then there's one last thing I have to admonish you of. Because you are not a citizen, you need to understand that with this plea you've entered you may be subject to the consequences of deportation, exclusion from admission to the United States, or denial of naturalization under the laws of the United States.

Do you understand that?

(The defendant replies in Spanish.)

They haven't placed a hold on you. They haven't arrested you for ICE so chances are, if they haven't already, they're not going to. But, technically, obviously they can always pick you up and deport you solely on the basis of this conviction because you were not a naturalized citizen.

Okay. Does she have any questions?

(An off-the-record discussion was had.)

THE INTERPRETER: She's–

MS. KAUZLARICH [Assistant State's Attorney]: She's a resident. She's not a U.S. citizen.

THE INTERPRETER: She's not a U.S.–

MS. KAUZLARICH: She's not a U.S. citizen.

THE INTERPRETER: Yeah, she's not a U.S. citizen, but she has–

THE COURT: Right. I'm supposed to read it if they're not absolute citizens, because, you know, we have no idea what ICE is doing these days.

MR. JACKSON [defense counsel]: No. Every day is a different one.

THE COURT: Yes. So good luck, ma'am. Don't be getting any packages that aren't yours."

¶ 6    Defendant completed her 180-day jail sentence and was deported shortly after her release from jail in late 2010. Defendant subsequently filed two separate motions requesting the court to set aside her guilty plea, which were denied by the court.

¶ 7    On September 23, 2011, defendant sought relief under the Post-Conviction Hearing Act asserting her trial counsel was ineffective for failing to advise defendant she would be deported following a conviction for unlawful possession with intent to deliver more than 2,000 grams but not more than 5,000 grams of cannabis. Since her attorney indicated deportation was a possibility, but "very unlikely," in her case, defendant alleged she relied on this inaccurate advice when she accepted the fully negotiated plea agreement. At the time defendant filed her postconviction petition, she was being held in immigration detention out of state.

¶ 8    The court denied the State's motion to dismiss defendant's postconviction petition on November 16, 2011. Consequently, the court considered the merits of defendant's

postconviction petition following a third-stage evidentiary hearing that took place on February 17, 2012.

¶ 9       During the hearing, the court accepted defendant's affidavit as her testimony, since she was unable to attend due to her deportation. Defendant's affidavit averred that her attorney advised her to plead guilty and her "immigration status won't be affected." Defendant also alleged in her affidavit that her attorney "assured" her "immigration consequences would be very unlikely. He gave me the same piece of legal advice on several occasions, and not once did he warn me about deportation."

¶ 10       Trial counsel testified that he advised defendant he "cannot guarantee what the government's going to do if she's convicted as a felon." When asked if he told defendant she would not be deported, counsel stated "Absolutely not. I do a heavy Hispanic representation and I've been doing this for a long time since immigration came to town. That's [*sic*] last thing I would tell anyone." On cross-examination, counsel admitted he did not research the federal statutes to determine whether the crime to which defendant intended to plead guilty would affect her immigration status. In addition, when asked if he warned defendant she would be deported, counsel responded:

> "[Did I] tell her that she would be [deported]? I don't say that. I say I can't guarantee what they are going to do to you because that's not my line of work and *** because I don't know what they are going to do because you never know what the immigration people do. Some people you think would be deported immediately nothing happens to, and other people who do [*sic*] slightest thing other people they are out of here. There's no rhyme or reason to it."

¶ 11       At the close of testimony, the trial court noted "this case comes down to the fact that she received a huge break. She was looking at thirty years in prison based upon the evidence. And the evidence–this isn't a case where the evidence is close." The court continued, "She got probation. She got a h*** of a deal" and her attorney "did her a h*** of [a] favor, even though it didn't turn out that way, to get her the plea deal she [*sic*] did."

¶ 12       The court concluded that, even though it did not admonish defendant until after she accepted the plea agreement, "the bottom line is she was admonished." The court stated it found defense counsel's testimony to be truthful and that defendant knew it was a "roll of the dice" regarding whether she would be deported. Based on these findings, the court denied defendant's petition for postconviction relief. Defendant appeals.

¶ 13                           ANALYSIS

¶ 14       On appeal, defendant alleges her trial counsel was ineffective for failing to recognize, and then inform her, she would be deported following her guilty plea for a felony offense involving the unlawful possession of several pounds of cannabis. Consequently, defendant argues she was denied her constitutional right to effective assistance of counsel and claims the trial court improperly denied her postconviction petition after a third-stage evidentiary hearing.

¶ 15       The State responds the trial court's denial of defendant's postconviction petition was not manifestly erroneous for two reasons. First, the State argues trial counsel was not ineffective since he advised defendant she could potentially be deported. Second, the State claims defendant did not suffer any prejudice from counsel's purported ineffective assistance.

- 4 -

¶ 16    The Post-Conviction Hearing Act provides a remedy to a criminal defendant whose constitutional rights were substantially violated in his original trial or sentencing hearing. 725 ILCS 5/122-1 *et seq*. (West 2008). The Act provides a three-stage process. 725 ILCS 5/122-2.1(a) (West 2008). A third-stage hearing involves an evidentiary hearing on the merits of the petition. 725 ILCS 5/122-6 (West 2008). In this case, defendant's postconviction petition reached the third stage, and the trial court was called upon to determine witness credibility, decide the weight to be given testimony and evidence, and resolve any evidentiary conflicts. *People v. Carter*, 2013 IL App (2d) 110703, ¶ 74. The trial court's decision following the third-stage evidentiary hearing will not be reversed on review unless it is manifestly erroneous. *Id*.

¶ 17    To prevail on a claim of ineffective assistance of trial counsel, as defendant alleges in her postconviction petition, defendant must establish trial counsel's performance was deficient and counsel's unprofessional conduct caused prejudice to defendant. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The first prong of an analysis under *Strickland* requires defendant to show that trial counsel's representation fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 687-88.

¶ 18    While before the trial court, in this case, defense counsel agreed he did not advise defendant she would be deported. He testified that he is an experienced attorney with a "heavy Hispanic" caseload, but he could never be certain of "what the immigration people do." Specifically, defense counsel stated:

> "[Did I] tell her that she would be [deported]? I don't say that. I say I can't guarantee what they are going to do to you because that's not my line of work and *** because I don't know what they are going to do because you never know what the immigration people do."

Further, defense counsel testified he did not perform any legal research to determine whether defendant's conviction would trigger deportation. We do not disagree with the trial court's finding that counsel's testimony, in this regard, was truthful.

¶ 19    However, we begin by examining the applicable federal statute and recent case law interpreting the statute to determine whether counsel's advice was reasonable in this case. Section 1227(a)(2)(B)(i) of title 8, the applicable federal statute, addresses deportation consequences for a nonresident following a conviction related to the possession of a controlled substance. 8 U.S.C. § 1227(a)(2)(B)(i) (2006). The relevant provision applicable to this case provides:

> "Any alien who at any time after admission has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance ***, other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable." 8 U.S.C. § 1227(a)(2)(B)(i) (2006).

¶ 20    In *Padilla v. Kentucky*, 559 U.S. 356 (2010), a decision issued by the United States Supreme Court only three months prior to this defendant's plea of guilty, the Court considered this statute and determined that defense counsel has a duty to advise a noncitizen client that a conviction for possession of more than 30 grams of cannabis carries the "practically inevitable" collateral consequence of deportation. *Padilla*, 559 U.S. at 363-64. Thus, even if

defense counsel in this case did not research the applicable federal statute, the holding in that landmark decision should have been familiar to this attorney, who handles a "heavy Hispanic" caseload. Counsel should have known he was required to instruct defendant that due to the amount of cannabis she was willing to admit she possessed, subsequent deportation would be "presumptively mandatory." *Padilla*, 559 U.S. at 368-69. Consequently, we conclude defense counsel's representation fell below an objective standard of reasonableness when he failed to accurately inform defendant that, if she accepted the plea agreement, deportation would be imminent.

¶ 21 Yet, the trial court denied defendant's postconviction petition primarily because the court itself provided separate admonishments regarding deportation to this defendant during her plea hearing. While ruling on defendant's postconviction petition, the court noted that, based on its admonishments, defendant knew at the time of her plea, she was taking a "roll of the dice" regarding deportation, specifically noting that "the bottom line is she was admonished."

¶ 22 We recognize that, in some cases, a trial court's subsequent admonishments may counterbalance, and even correct, the deficient legal advice provided by defense counsel (see *People v. Hall*, 217 Ill. 2d 324, 340-41 (2005)), but we conclude this is not such a case. In addition to the statutorily suggested admonishments regarding deportation, the court further commented:

> "They haven't placed a hold on you. They haven't arrested you for ICE so chances are, if they haven't already, they're not going to."

The court then stated: "But, technically, obviously they can always pick you up and deport you solely on the basis of this conviction because you were not a naturalized citizen." Based on the unique sequence of events in this case, we conclude the trial court's admonishments did not overcome the ineffective assistance of defense counsel since the court minimized any concerns about the risk of deportation and, by doing so, reinforced counsel's deficient advice.

¶ 23 Next, we consider whether the trial court's finding that counsel's advice did not prejudice defendant was also contrary to the manifest weight of the evidence. *Strickland*, 466 U.S. at 687. An offender satisfies the prejudice prong by demonstrating she rationally could have rejected the agreement and gone to trial regardless of whether she could prove the existence of a valid defense. *People v. Guzman*, 2014 IL App (3d) 090464, ¶ 33.

¶ 24 In this case, defendant's goal was to remain in the United States, not to avoid a conviction and lengthy sentence of incarceration. Thus, the court erred by focusing on whether defendant received a "h*** of a deal" because she received a lenient sentence. In fact, the *Padilla* Court emphasized that preserving a defendant's right to remain in the United States for any additional length of time may be more important to a defendant than a potential lengthy period of incarceration following a conviction. *Padilla*, 559 U.S. at 368.

¶ 25 We acknowledge the decision in *Padilla* changed the landscape for practitioners representing noncitizen clients by requiring defense counsel to provide accurate information concerning collateral immigration consequences to their clients. In other words, prejudice from ineffective assistance of counsel arises when an accused pleads guilty without being fully informed by defense counsel that the guilty plea accelerates "presumptively mandatory" deportation. Since *Padilla*, a trial court should not determine whether the negotiated agreement resulted in a shorter sentence but, rather, whether defendant *knew*, based on the advice of

defense counsel, that admitting a particular offense would accelerate deportation proceedings. Due to the ineffective advice of trial counsel in this case, defendant could not have known she faced "presumptively mandatory" deportation by pleading guilty to count II, which could have been postponed by insisting on a trial on the merits.

¶ 26 In *People v. Guzman*, the accused alleged that, due to ineffective assistance of trial counsel, his guilty plea was not well-informed because counsel failed to advise him of any risk of deportation at the time he entered his guilty plea. *Guzman*, 2014 IL App (3d) 090464, ¶ 32. This court concluded, had defendant been aware of the risk of collateral consequences of deportation when he pled guilty, he could have made the rational decision to reject the plea agreement, rather than accept a plea of guilty that guaranteed his removal, resulting in prejudice. *Id*. ¶ 35.

¶ 27 Similarly, defendant's affidavit alleges she would not have accepted the negotiated agreement if defense counsel had accurately advised her that a conviction for possession of more than 30 grams of cannabis guaranteed her removal. It is undisputed that defendant was, in fact, swiftly placed in immigration detention, after she completed her short 180-day jail sentence, but before she filed her postconviction petition. Defendant was subsequently deported.

¶ 28 Consequently, because defendant's affidavit establishes she would not have elected to accelerate the process of deportation, we conclude the trial court's finding that defendant did not suffer any prejudice, based on counsel's ineffective advice, was contrary to the manifest weight of the evidence. For these reasons, we reverse the trial court's denial of defendant's postconviction petition and remand the matter to the trial court for further proceedings.

¶ 29                                          CONCLUSION

¶ 30 For the foregoing reasons, the judgment of the circuit court of Rock Island County denying defendant's postconviction petition for relief is reversed.

¶ 31 Reversed and remanded.

¶ 32 JUSTICE SCHMIDT, dissenting.

¶ 33 Leaving aside complex federal immigration issues, this case is a relatively simple one. Defendant, in lieu of going to trial and facing a 30-year sentence, accepted a plea for 180 days' incarceration and 30 months' probation. Defendant served 180 days and was subsequently deported. Defendant filed a petition for postconviction relief, alleging her guilty plea counsel was ineffective for failing to affirmatively inform her that she was subject to automatic deportation if she pled guilty to unlawful possession of cannabis with intent to deliver.

¶ 34 Ineffective assistance of counsel claims, including those arising from a guilty plea, are analyzed under the rubric set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). In order to prevail on the claim, a defendant must prove (1) his counsel's performance failed to meet an objective standard of competence; and (2) counsel's deficient performance resulted in prejudice to the defendant. *Id*. at 687; *People v. Evans*, 186 Ill. 2d 83, 93 (1999).

¶ 35 Unlike the majority, I find defendant failed to prove her guilty plea counsel's representation fell below an objective standard of competence. Counsel testified that he did not

- 7 -

advise defendant that she would not be deported. He stated only that he did not know what the immigration authorities would do, as that is not his line of work. This, however, does not warrant further discussion. Even assuming defendant's counsel was constitutionally deficient, this case can be resolved on the prejudice prong alone. Both the United States Supreme Court and the Illinois Supreme Court have indicated that if it is easier to dispose of an ineffectiveness claim on the grounds of lack of sufficient prejudice, it is not necessary to first address whether defense counsel's performance was deficient. *Strickland*, 466 U.S. at 697; *People v. Albanese*, 104 Ill. 2d 504, 527 (1984).

¶ 36    To establish prejudice, defendant has to show a reasonable probability that, but for counsel's errors, she would not have pled guilty and would have insisted on going to trial. See *People v. Rissley*, 206 Ill. 2d 403, 457 (2003). In articulating what is required, our supreme court has stated "[a] bare allegation that the defendant would have pleaded not guilty and insisted on a trial if counsel had not been deficient is not enough to establish prejudice." *People v. Hall*, 217 Ill. 2d 324, 335 (2005). "Rather, the defendant's claim must be accompanied by either a claim of innocence or the articulation of a plausible defense that could have been raised at trial." *Id*. at 335-36.

¶ 37    Here, defendant states only that she would not have pled guilty had she been correctly informed of the deportation consequences. Defendant failed to assert either innocence or a plausible defense in any of her postconviction pleadings, including her two untimely motions to withdraw her plea and the petition for postconviction relief itself. Like that of the trial court, my review of the record indicates that the evidence is not close–after being properly Mirandized, defendant admitted that she knew her cousin dealt cannabis, that her cousin paid her to accept packages, and that she had looked inside one of the packages before and concluded her cousin was probably shipping something illegal to her. These facts obviate both a claim of innocence and a plausible defense.

¶ 38    Overlooking the absence of either one of those requirements, defendant still failed to articulate how her alleged ignorance of the deportation consequences factored into her decision to plead guilty. In other words, she does not explain why, had she known of that consequence, she would have pleaded not guilty and insisted on going to trial.

¶ 39    In finding that defendant satisfied the prejudice prong of *Strickland*, the majority states, "[i]n this case, defendant's goal was to remain in the United States, not to avoid a conviction and lengthy sentence of incarceration." *Supra* ¶ 24. Says the defendant. The majority also goes on to state that since *Padilla*, 559 U.S. at 368-69, prejudice from ineffective assistance of counsel arises when an accused pleads guilty without being fully informed by defense counsel that the guilty plea accelerates "presumptively mandatory" deportation. *Supra* ¶ 20. Yet, the *Padilla* Court did not address whether the defendant proved he was prejudiced pursuant to *Strickland*'s second prong. That determination was left to Kentucky's supreme court on remand. *Padilla*, 559 U.S. at 369. The majority misconstrues the holding of *Padilla*.

¶ 40    Admittedly, the *Padilla* Court emphasized that "[p]reserving the client's right to remain in the United States may be more important to the client than any potential jail sentence." (Internal quotation marks omitted.) *Padilla*, 559 U.S. at 368. However, *Padilla* also stated "a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Id.* at 372 (citing *Roe v. Flores-Ortega*, 528 U.S. 470, 480, 486 (2000)). Here, defendant simply says it and the majority is convinced. I cannot imagine

how rejection of the plea offer in this case would have been rational. Had defendant chosen to go to trial, she would not have been spared deportation once convicted, and would have also been subjected to a much longer prison sentence. The trial court correctly observed that defendant received a "hell of a deal"–defendant faced 30 years if she went to trial and was convicted, versus 6 months and 30 months' probation pursuant to the plea.

¶ 41    No rational person, other than perhaps a disfavored relative of Kim Jong Un facing deportation to North Korea, would choose 30 years in the state penitentiary followed by deportation over the deal defendant took. Nonetheless, the majority simply accepts defendant's statement as true: "defendant's affidavit establishes she would not have elected to accelerate the process of deportation." *Supra* ¶ 28. Well, I suppose that defendant would not "elect to accelerate the process of deportation." But that is not what defendant "elected." She "elected" to do 6 months before facing deportation over the possibility of 30 years before deportation. That is, she "elected" to avoid 29½ years in prison, the only rational choice she had under the circumstances.

¶ 42    The manifest weight of the evidence upon which the majority relies to reverse the trial court is defendant's bare assertion contained in an affidavit. I, therefore, respectfully dissent. I would affirm the trial court.