# Illinois Official Reports

## Appellate Court

<table>
<tr><td></td><td>

*People v. Hoare*, 2018 IL App (2d) 160727

</td></tr>
</table>

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ARTHUR G. HOARE, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-16-0727 |
| Filed | January 17, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Lake County, No. 12-CF-3735; the Hon. Daniel B. Shanes, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Timothy R. Roellig, of Novelle & Roellig, LLC, of Chicago, for appellant.<br><br>Michael G. Nerheim, State's Attorney, of Waukegan (Patrick Delfino, Lawrence M. Bauer, and David A. Bernhard, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE JORGENSEN delivered the judgment of the court, with opinion.<br>Justices McLaren and Spence concurred in the judgment and opinion. |

**OPINION**

¶ 1    Defendant, Arthur G. Hoare, appeals the summary dismissal of his petition under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2014)). He contends that the petition stated the gist of a meritorious claim that his trial counsel was ineffective for failing to advise him that, by pleading guilty to a drug-possession felony and accepting a sentence of first-offender probation, he would necessarily be subject to deportation. We reverse and remand.

¶ 2    Defendant entered a negotiated guilty plea to unlawful possession of cocaine (720 ILCS 570/402(c) (West 2012)) and was sentenced to 24 months' first-offender probation (720 ILCS 570/410(a) (West 2012)). Under "410 probation," the court does not enter a judgment of conviction (720 ILCS 570/410(a) (West 2012)) and further proceedings are delayed until the defendant completes his probation (720 ILCS 570/410(b) (West 2012)). If the defendant violates his probation, the trial court may enter a judgment on the original finding of guilt and proceed accordingly. 720 ILCS 570/410(e) (West 2012). If the defendant completes his probation successfully, he is discharged, the charges are dismissed (720 ILCS 570/410(f) (West 2012)), and the disposition is not considered a criminal conviction under Illinois law (720 ILCS 570/410(g) (West 2012)).

¶ 3    On June 10, 2013, the parties presented the plea agreement. The trial court noted that defendant was also pleading guilty to driving with a revoked license and would pay costs for that offense. The proceedings continued:

"THE COURT: For all of these, though, do you understand that for the drug case, this 410 probation as we're calling it, is a special kind of probation. A conviction is not being entered for Illinois law purposes today. If you successfully complete the probation, then there won't be a conviction for that. There will be on the traffic offense.

But regardless, these dispositions could result in the federal government trying to remove or deport you from the United States or prevent you from obtaining naturalized United States citizenship.

Nobody here, not the lawyers, not me, nobody, can make you any promises or representations as to what the federal government might do. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Mr. Grimes [(defendant's attorney)], have you and your client had an opportunity to look into the immigration consequences?

MR. GRIMES: Yes, Judge. We believe that this is an appropriate disposition taking that into account.

THE COURT: Okay. And you had a chance to speak with immigration?

MR. GRIMES: An attorney.

THE COURT: You spoke to an immigration attorney?

MR. GRIMES: Yes.

THE COURT: Okay. Is that correct, sir?

THE DEFENDANT: Yes, sir."

¶ 4    The court then heard the following factual basis for the plea. Officers would testify that they stopped defendant for driving with a revoked license. At the police station, he removed his

hat; a white rock-like substance fell out. At a police crime laboratory, the substance tested positive for cocaine and weighed 0.88 grams. Defendant stipulated to the factual basis, which the court accepted. The court then admonished defendant of his appeal rights.

¶ 5 Defendant did not file a postjudgment motion or a direct appeal. On September 28, 2015, the trial court found that defendant had admitted to violating his probation. It extended his probation for 12 months and ordered him to serve 6 months' periodic imprisonment.

¶ 6 On March 17, 2016, defendant, through counsel, filed his petition under the Act. The petition alleged as follows. At all relevant times, defendant had been a citizen of Belize but not of the United States. On February 5, 2015, the Immigration and Naturalization Service (INS) notified him that he was charged with being subject to deportation under section 1227(a)(2)(B)(i) of the Immigration and Nationality Act (Immigration Act) (8 U.S.C. § 1227(a)(2)(B)(i) (2012)), based on his guilty plea in this case. Section 1227(a)(2)(B)(i) states, "Any alien who at any time after admission has been convicted of a violation of *** any law or regulation of a State, the United States, or a foreign country relating to a controlled substance ***, other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable." 8 U.S.C. § 1227(a)(2)(B)(i) (2012) Under section 1101(a)(48)(A) of the Immigration Act (8 U.S.C. § 1101(a)(48)(A) (2012)), the plea was a "conviction" of violating a state or federal law relating to a controlled substance (see 21 U.S.C. § 802 (2012) (defining controlled substance)).

¶ 7 The petition alleged further that, in the summer of 2015, federal officials ordered defendant deported. On February 18, 2016, an immigration appeals court denied his appeal. However, immigration counsel had advised defendant's attorneys that defendant could reopen the immigration case were his conviction vacated. Defendant was married to a United States citizen and had children born here.

¶ 8 The petition claimed that defendant's trial counsel had been ineffective for failing to advise him that his guilty plea and 410 probation would result in his deportation even though there had been no conviction for state-law purposes. The petition argued first that counsel's performance had been objectively deficient. Under *Padilla v. Kentucky*, 559 U.S. 356 (2010), trial counsel must advise a defendant of the immigration consequences of a possible guilty plea. The obligation is most stringent when the consequences are clear: the attorney may not merely tell the client that there is a risk of adverse immigration results. Here, defendant's guilty plea was clearly a "conviction" under the Immigration Act, which, as pertinent here, defines that term as "a formal judgment of guilt of the alien entered by a court or, if adjudication of guilt has been withheld, where *** the alien has entered a plea of guilty *** and *** the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed." 8 U.S.C. § 1101(a)(48)(A) (2012). Moreover, the Seventh Circuit had held that a guilty plea and 410 probation for any drug offense other than minor cannabis possession constitute a conviction under the Immigration Act, subjecting the defendant to deportation with no opportunity for discretionary relief. *Gill v. Ashcroft*, 335 F.3d 574, 579 (7th Cir. 2003).

¶ 9 The petition alleged that defendant's trial counsel had not met his obligation under *Padilla*. It attached defendant's affidavit stating, in pertinent part, as follows. After he was arrested in this case, immigration officers took him into custody. One told him that, were he convicted in this case, he would be deported. Defendant was released on bond. He did not speak to an immigration lawyer before June 10, 2013. After hiring trial counsel, defendant told him that he was not a United States citizen and recounted what the immigration officer had told him.

Counsel responded that he did not know anything about immigration law but that a guilty plea and 410 probation would mean that defendant would not have been convicted and that successfully completing his probation would result in the dismissal of the charges. Defendant took this to mean that, on completing his probation, he would not be convicted and thus could not be deported.

¶ 10 The petition also attached counsel's affidavit stating as follows. At all pertinent times, he had known that defendant was not a United States citizen. Before the entry of the guilty plea, he had informed defendant that the plea and 410 probation, if successfully completed, would mean that, under Illinois law, defendant would not have been convicted of the drug offense. Counsel also advised defendant that the guilty plea and 410 probation could result in adverse consequences for his immigration status. He did not affirmatively advise defendant that the plea and 410 probation would result in his deportation.

¶ 11 Defendant then alleged that he had suffered prejudice from counsel's substandard representation. As pertinent here, defendant's affidavit stated as follows. At the guilty-plea hearing, he learned for the first time that counsel had spoken with an immigration lawyer. He answered the court's inquiry on this matter as he did only because of what counsel had said. When counsel told the court that the plea agreement was the best result considering defendant's immigration status, defendant took it to mean that counsel had confirmed that the INS would not consider him to have a conviction. Only afterward did defendant speak to an immigration attorney and learn that he was now subject to deportation with no chance for relief.

¶ 12 Defendant's affidavit stated that he entered his plea in reliance on counsel's representation that his plea would not be a conviction and thus would not enable the federal government to deport him. He would not have pleaded guilty had counsel met his obligation under *Padilla*. He would have gone to trial rather than face certain deportation. He had been married to a United States citizen for more than 9 years and had a 5-year-old daughter and a 13-year-old stepdaughter who were United States citizens. Both defendant and his wife had no intention of living outside the United States. They were both employed in this country. He would have done everything he could have to keep the family together in this country.

¶ 13 The trial court summarily dismissed the petition. The court's written judgment stated as follows. Before accepting defendant's plea, the court had admonished him of the immigration consequences and he had told the court that he understood. Under *People v. Unzueta*, 2017 IL App (1st) 131306-B, and *People v. Carranza-Lamas*, 2015 IL App (2d) 140862, ¶¶ 45-47, the admonishments cured any deficiency in counsel's advice and belied defendant's allegation that he would not have pleaded guilty had he been properly advised. Further, defendant told the court that an immigration attorney had been consulted, refuting any contrary allegation in the petition.

¶ 14 Turning to the prejudice prong, the court cited the general rule that, in the guilty-plea context, a defendant must establish that, absent counsel's deficient performance, he would have insisted on going to trial and, to do so, he must either assert a claim of actual innocence or articulate a plausible defense that could have been raised at trial. See *id.* ¶ 35. Here, defendant's petition did not assert a claim of actual innocence or articulate any plausible defense. Moreover, there could be no plausible defense; defendant had stipulated that, when he removed his hat at the police station, nearly a gram of cocaine fell out.

- 4 -

¶ 15　　The court concluded that defendant's claim of ineffective assistance of counsel was frivolous and patently without merit, and it dismissed the petition. Defendant appealed.

¶ 16　　On appeal, defendant argues that his petition stated the gist of a meritorious claim that his trial counsel rendered ineffective assistance. To establish ineffective assistance in a guilty-plea case, a defendant must show that (1) counsel's performance was objectively unreasonable and (2) it is reasonably probable that, but for counsel's unprofessional errors, he would have elected to go to trial. See *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984); *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Defendant contends that his petition sufficiently alleged deficient performance because, under the plain language of the Immigration Act, his offense subjected him to deportation with no opportunity for relief. He also contends that the petition sufficiently alleged prejudice because it stated facts from which to find that, regardless of the strength of the State's evidence, he would have chosen to go to trial had he known that pleading guilty left him with no defense against deportation.

¶ 17　　We review *de novo* the summary dismissal of a postconviction petition. *People v. Edwards*, 197 Ill. 2d 239, 247 (2001). At this stage, the petition need allege only the gist of a meritorious constitutional claim. *Id.* at 244. Its factual allegations must be taken as true unless they are positively rebutted by the record and must be construed liberally in the defendant's favor. *People v. Usher*, 397 Ill. App. 3d 276, 279 (2009).

¶ 18　　We decide first whether the petition sufficiently stated deficient performance. We take the allegations as true and construe them liberally in defendant's favor, thus resolving any conflicts or ambiguities in the attachments in his favor and drawing reasonable inferences in his favor as well.

¶ 19　　The petition alleged as follows as to counsel's performance. Defendant, who counsel knew was a Belize national and not a United States citizen, was charged with possession of cocaine. Under the plain language of the Immigration Act, a "conviction" of that offense subjected him to deportation with no recourse other than the forbearance or neglect of federal authorities. And, under the plain language of the Immigration Act, as held by a federal appellate court, a "conviction" included a guilty plea and 410 probation. Put differently, were defendant convicted of the offense, either by a plea or after a trial, he would be legally defenseless against deportation. Defendant told counsel that a federal official had informed him that a conviction would mean deportation. Counsel discussed the matter with an immigration attorney, but defendant was not present at the discussion. Between taking the case and appearing at the plea hearing, counsel did not tell defendant that a guilty plea and 410 probation would be a conviction under the Immigration Act or that they would result in his deportation. Counsel told defendant that a guilty plea and 410 probation "could result in adverse consequences" for his immigration status. Counsel also told defendant that a guilty plea with the successful completion of 410 probation would not be a conviction under Illinois law.

¶ 20　　Based on the foregoing, defendant contends that, under *Padilla*, counsel's performance was objectively unreasonable. Defendant reasons that counsel's general and inconclusive advice that the prospective guilty plea "*could*" result in "adverse consequences" was insufficient to convey the harsh reality that entering the plea *would* leave him defenseless against deportation. Defendant relies on *Padilla*'s statement:

　　　"When the law is not succinct and straightforward ***, a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences. But when the deportation

consequence is truly clear ***, the duty to give correct advice is equally clear." *Padilla*, 559 U.S. at 369.

Defendant contends that here the law was succinct and straightforward, making the deportation consequence of a guilty plea clear: he could not avoid deportation. Therefore, he reasons, counsel's advice that defendant "could" be subject to "adverse immigration consequences" was precisely what *Padilla* implies is deficient performance in a case such as this one. We agree.

¶ 21 Section 1227(a)(2)(B)(i) of the Immigration Act states plainly that a "conviction" of possessing cocaine (and almost any other drug offense) makes a defendant "deportable." 8 U.S.C. § 1227(a)(2)(B)(i) (2012). Defendant's offense was indistinguishable from Padilla's: there was no doubt that it was within the statutory language. And, although section 1101(a)(48)(A) is not as simple or straightforward as section 1227(a)(2)(B)(i), it should have been clear to counsel that 410 probation was a "form of *** restraint on [defendant's] liberty." 8 U.S.C. § 1101(a)(48)(A) (2012). Moreover, to the extent that this language required construction, the Seventh Circuit had provided it in *Gill*, under circumstances that fit defendant's situation, leaving no plausible doubt that, by pleading guilty in return for 410 probation, defendant would be deportable without recourse. Thus, as in *Padilla*, the deportation consequence was "truly clear." *Padilla*, 559 U.S. at 369.

¶ 22 Measured by this standard, defendant's petition stated the gist of a meritorious allegation that counsel performed deficiently by failing to inform him that a guilty plea to the charge of cocaine possession, even with 410 probation, would make him deportable with no opportunity for relief, save the neglect or indifference of federal authorities. The law, especially in view of *Gill*, made it plain that, by accepting the plea agreement, defendant was signing away any legal right or basis to avoid deportation. Counsel was obligated to give him more than the tentative and vague advice that his plea "could result" in "adverse immigration consequences." Counsel was obligated to tell defendant the concrete and easily ascertained truth: that the plea would strip defendant of any defense to deportation. Counsel did not affirmatively mislead defendant, but under *Padilla*, that was not needed to establish professionally unreasonable performance. See *Padilla*, 559 U.S. at 370-71.

¶ 23 Although foreign authorities do not bind this court, we may consult them for their persuasive value. We find *Ex Parte Torres*, 483 S.W.3d 35 (Tex. Crim. App. 2016) directly applicable and well reasoned. There, the defendant, a Mexican national and lawful permanent resident of the United States, pleaded guilty to robbery and possession of cocaine, in exchange for deferred-adjudication supervision on both charges. *Id.* at 38-39. Shortly afterward, the INS initiated removal proceedings against him. He applied for postconviction relief, alleging that his trial attorney had been ineffective for failing to advise him that his guilty plea to the cocaine offense would result in mandatory deportation. *Id.* at 39.

¶ 24 At a hearing on the application, the attorney testified that, from the start, he had advised the defendant to consult an immigration lawyer and had told him that pleading guilty to either of the two felonies at issue " 'could result in his deportation.' " *Id.* at 40. The attorney did not independently review the Immigration Act to determine whether the offenses were deportable. *Id.* He also testified that, although he had advised the defendant that he "could be deported" as a result of his plea, he did not "affirmatively tell [the defendant] that he would be deported because, in his experience, a person can sometimes plead guilty to an aggravated felony and

never actually be deported." *Id.* Crediting the attorney's testimony, the trial court held that he had not been ineffective. *Id.* at 41.

¶ 25   The Court of Criminal Appeals reversed the intermediate court of appeals, holding that the defendant had not shown prejudice. The court held first, however, that he had satisfied *Strickland*'s performance prong. The court stated that, under *Padilla*, the defendant's attorney had not sufficiently advised him of the " 'presumptively mandatory' deportation consequence of his plea." *Id.* at 44. As in *Padilla*, this consequence had been " 'truly clear.' " *Id.* (quoting *Padilla*, 559 U.S. at 369). Under section 1227(a)(2)(B)(i) of the Immigration Act, the drug offense to which the defendant had pleaded guilty was indistinguishable from the offense in *Padilla*; just by reading the statute, counsel could easily have determined that a conviction would subject his client to deportation. *Id.* at 44-45. (Also, the robbery offense, as an "aggravated felony" under section 1227(a)(2)(A)(iii) (8 U.S.C. § 1227(a)(2)(A)(iii) (2012)), subjected the defendant to deportation, apparently without any opportunity for discretionary relief. *Torres*, 483 S.W.3d at 45.) Further, the Immigration Act's definition of "conviction" (8 U.S.C. § 1101(a)(48)(A) (2012)) unambiguously implied that the defendant's deferred-adjudication supervision would not take his case out of section 1227(a)(2)(B)(i). *Torres*, 483 S.W.3d at 45.

¶ 26   The court held that the attorney had not met his obligation "to adequately warn [the defendant] of the deportation consequences of his guilty plea that made him 'subject to automatic deportation.' " *Id.* (quoting *Padilla*, 559 U.S. at 360). The court explained:

> "In short, it was not enough for counsel to advise [the defendant] that he might be deported; rather, counsel was required to inform [the defendant] that, under these circumstances, his deportation was a virtual legal certainty. [Citation.] And, although *** counsel cannot always accurately predict *** whether a particular individual will *** be deported, predicting the future is not what *Padilla* requires. Instead, *Padilla* requires that counsel give a defendant accurate legal advice about the 'truly clear' consequences of a plea of guilty to an offense that, as a matter of law, renders him 'subject to automatic deportation.' [Citation.] We, therefore, agree *** that 'counsel's constitutional duty to inform his client that his [client's] removal is a virtual legal certainty does not wane merely because counsel believes the probability of actual removal is uncertain.' [Citation.] Given that [the defendant's] guilty plea rendered him subject to automatic deportation, we hold that, by advising [the defendant] that deportation was a mere possibility, [the defendant's] trial counsel failed to satisfy his duties under *Padilla*." *Id.* at 45-46.

We agree with this reasoning. When the consequences of a guilty plea are clear, certain, and succinct, trial counsel cannot satisfy his obligation with advice that is vague and equivocal. More specifically, if it is clear that deportation is legally automatic, as it was in *Padilla* and *Torres* and is here, the attorney fails *Strickland*'s performance standard by advising his client only that a guilty plea might affect his immigration status and that he should consult an immigration attorney.

¶ 27   Moreover, we cannot agree with the trial court here that the admonishments that defendant received made up for any deficiency in counsel's representation. The court did not advise defendant any more specifically or clearly than did counsel. Indeed, by conveying that "nobody" could make defendant any "promises" about the immigration consequences of his plea, the court's admonishments were false, insofar as counsel was required to definitively

articulate these consequences. Thus, based on *Padilla* as binding, and *Torres*, which is factually indistinguishable from this case, as persuasive, we hold that defendant's petition, taken as true and construed liberally, states the gist of a meritorious claim that counsel performed unreasonably under the first prong of *Strickland*.

¶ 28 We are aware that there is authority from this court that might be taken to hold otherwise. In *Carranza-Lamas*, the defendant, per an agreement, pleaded guilty to unlawful possession of cocaine and received two years of 410 probation. Before accepting the plea, the trial court admonished him that a conviction of his offense " 'may have the consequence of deportation, denial of naturalization or exclusion of admission to the United States if you are not a citizen of the United States.' " *Carranza-Lamas*, 2015 IL App (2d) 140862, ¶ 4. At the request of the defendant's attorney, the court clarified (or so it seemed) that, if the defendant complied with the 410 probation, there would be " 'no conviction.' " *Id.* ¶ 5.

¶ 29 Shortly before the defendant's probation ended, he petitioned for relief under the Act. He claimed that his attorney had been ineffective for misadvising him that a guilty plea and 410 probation would not be a conviction under the Immigration Act and thus would not subject him to deportation. The defendant's petition alleged the following facts. Since 2009, before he committed the drug offense, the federal government had been seeking to deport him on the ground that he had entered the country illegally. Before pleading guilty, the defendant told his trial attorney that he was not a citizen and did not wish to be deported. Eight days before his probation ended, an immigration judge ordered him deported. An immigration attorney told the defendant that, if his "conviction" in the drug case were vacated, the deportation case could be reopened and he could obtain lawful permanent resident status because his fiancée, who was the mother of his children, was a United States citizen. *Id.* ¶ 6.

¶ 30 The petition alleged that the defendant's trial attorney had been ineffective for misadvising him that a guilty plea and 410 probation would not be a conviction for immigration purposes. *Id.* According to the petition, the attorney's advice was objectively unreasonable under *Padilla*. Further, it had caused prejudice because, had the attorney advised the defendant correctly, he would not have entered the guilty plea. On this point, the petition contended that the defendant had a strong defense, which was supported by the facts in an affidavit that his fiancée filed. *Id.* ¶¶ 7-8.

¶ 31 At an evidentiary hearing on the petition, the defendant's immigration attorney testified that, if the drug conviction stood, the defendant could not remain in the United States, even if he married his fiancée. *Id.* ¶ 13. If the drug conviction were vacated and the defendant married his fiancée, he would still have to leave the United States for at least 10 years because he had been there illegally to begin with; but he might be able to return in fewer than 10 years if he could obtain a discretionary "waiver" based on extreme hardship to his spouse. *Id.* Also, even an illegal immigrant who is convicted of a drug charge might not actually be deported as it would not be "a certainty" that federal authorities would "come after" him. *Id.* ¶ 14.

¶ 32 At the end of the lengthy hearing, the trial court found that the defendant had not proved prejudice under *Strickland*. The court explained that the deportation order had been based on the defendant's illegal presence in the country, which predated the drug conviction and the trial attorney's allegedly substandard performance. Also, the court reasoned, the defendant's defense to the drug charge was not sufficiently strong to support his claim that, with proper advice, he would have gone to trial. *Id.* ¶ 29.

¶ 33    On appeal, the defendant argued in part that he had satisfied the first prong of the *Strickland* test, as applied in *Padilla*. He maintained, as he had in his petition, that the consequences of his guilty plea to a drug offense were as clear and succinct as they had been for the defendant in *Padilla*. He noted that both cases turned on section 1227(a)(2)(B)(i) of the Immigration Act, which stated in unmistakable terms that a conviction of any drug offense other than first-time petty cannabis possession is deportable without legal recourse. *Id.* ¶ 37. He noted further that, under section 1101(a)(48)(A) of the Immigration Act and *Gill* (which had been decided years before the defendant was charged), his guilty plea and 410 probation were a conviction that triggered automatic deportation under section 1227(a)(2)(B)(i). *Id.* ¶ 38.

¶ 34    This court held that, under "the unique facts" of the case, the trial court had properly denied the petition because the trial attorney's performance had not been deficient. *Id.* ¶ 44. We explained as follows. Unlike the defendant in *Padilla*, the defendant had already been subject to deportation and involved in deportation proceedings; thus, even before being charged, he had known that he could be deported. *Id.* Thus, his claim of deficient performance was necessarily based on the allegation that the trial attorney had affirmatively misadvised him that a guilty plea and 410 probation would not be a conviction for immigration purposes. *Id.* ¶ 45.

¶ 35    We rejected the defendant's argument that, even given the foregoing, the trial attorney's relatively vague advice about the clear immigration consequences of the plea and 410 probation was deficient performance under *Padilla*. We reasoned first (and primarily) that "researching [section 1101(a)(48)(A) and *Gill*] leads to the conclusion that section 410 probation is considered a conviction for immigration purposes, but it is not as clear as the statute at issue in *Padilla*." *Id.* ¶ 47. We noted second (and secondarily) that, in the defendant's particular circumstances, the attorney had to confront a separate and much more complicated issue—whether the defendant's conviction would restrict the availability of discretionary postdeportation relief if he married a United States citizen. *Id.* This issue involved the interpretation of at least one additional and separate statute, which was "even less clear on its face" than section 1101(a)(48)(A) and thus was not subject to *Padilla*'s high standard for a case in which the law is " 'succinct and straightforward.' " *Id.* (quoting *Padilla*, 559 U.S. at 369); see 8 U.S.C. § 1252(a)(2)(C) (2006). Therefore, we held that the attorney's performance had not been deficient under the first prong of *Strickland*, and we affirmed the judgment.

¶ 36    We acknowledge that this portion of *Carranza-Lamas* does appear to militate against defendant here. The secondary reason that we noted does not apply; defendant's petition said nothing about counsel's advice about postdeportation relief based on financial hardship to his wife. But the primary reason that we distinguished *Padilla* does potentially apply. However, to the extent that *Carranza-Lamas* does militate against defendant here, we decline to follow it.

¶ 37    In *Carranza-Lamas*, we distinguished *Padilla* on the following basis. In *Padilla*, and cases to which the Court plainly intended its opinion to apply, the defendant's attorney needed to concern himself only with section 1227(a)(2)(B)(i), which made a cocaine conviction automatically deportable—and this section was succinct and straightforward. But, in *Carranza-Lamas*, the defendant's attorney had to inform himself of (1) section 1227(a)(2)(B)(i), which made a cocaine conviction deportable, *and* (2) section 1101(a)(48)(A), which made 410 probation a "conviction" under section

- 9 -

1227(a)(2)(B)(i)—and this section (even after *Gill*) was "not as clear as the statute at issue in *Padilla*."[1] *Carranza-Lamas*, 2015 IL App (2d) 140862, ¶ 47.

¶ 38　　We must acknowledge that the foregoing reasoning is simply not persuasive. Although the legal situation in *Carranza-Lamas* was not as *simple* as the one in *Padilla*, it was as *clear*. In *Padilla*, as we noted in the preceding paragraph, the trial attorney had to take one step, which was straightforward. In *Carranza-Lamas*, the trial attorney had to take two steps—the same one as had the attorney in *Padilla*, followed by a second one that had not been present in *Padilla*. The second step was straightforward too, and it led to an unambiguous conclusion.

¶ 39　　The second step was, as noted, to determine whether section 1101(a)(48)(A) made a guilty plea and section 410 probation a "conviction" under section 1227(a)(2)(B)(i). That was not a difficult matter for the trial attorney. First, section 1101(a)(48)(A), though not as short and concise as section 1227(a)(2)(B)(i), was still unambiguous. It made a guilty plea, combined with a "punishment, penalty, or restraint on the alien's liberty" (8 U.S.C. § 1101(a)(48)(A)(ii) (2012)), a conviction for immigration purposes (8 U.S.C. § 1227(a)(2)(B)(i) (2012)). Surely the attorney should have grasped that a term of probation, even one with the *possibility* of having the slate cleared later if the defendant met its conditions, was a punishment, penalty, or, at the very least, a restraint on the defendant's liberty. Moreover, any doubt that the attorney entertained should have been cleared up by the eight-year-old opinion in *Gill*, which held that a guilty plea and 410 probation constitute a conviction under section 1227(a)(2)(B)(i). Thus, we cannot endorse our prior statement that section 1101(a)(48)(A) was not as clear as section 1227(a)(2)(B)(i). Especially in light of *Gill*, the former statute was no less clear than the latter.

¶ 40　　The situation confronting counsel here was no more difficult than that confronting the trial attorney in *Carranza-Lamas* (and the one in *Torres*). In *Carranza-Lamas*, the attorney had the plain language of section 1101(a)(48)(A) and the even plainer command of *Gill* to tell him that a guilty plea and 410 probation constituted a conviction that triggered section 1227(a)(2)(B)(i). Here, counsel had the plain language of section 1101(a)(48)(A), the even plainer command of *Gill*, *and* our acknowledgment in *Carranza-Lamas* that, under the statute and *Gill*, a guilty plea and 410 probation constituted a conviction that triggered section 1227(a)(2)(B)(i).

¶ 41　　We conclude that defendant's petition stated the gist of the first half of a meritorious claim of ineffective assistance of counsel—deficient performance. We turn to the second half—prejudice. We hold that, under the Supreme Court's recent decision in *Lee v. United States*, 582 U.S. ___, 137 S. Ct. 1958 (2017), the allegations of defendant's petition were minimally sufficient to satisfy *Strickland*'s prejudice prong.

¶ 42　　In *Lee*, the defendant was South Korean but had been in the United States for approximately 25 years as a lawful permanent resident and had built up two successful

---

[1]We acknowledge that the quoted passage from *Carranza-Lamas* does not unambiguously state that *section 1101(a)(48)(A)* is "not as clear as the statute in *Padilla*." *Carranza-Lamas*, 2015 IL App (2d) 140862, ¶ 47. The passage states, "[R]esearching [section 1101(a)(48)(A) and *Gill*] leads to the conclusion that section 410 probation is considered a conviction for immigration purposes, but *it* is not as clear as the statute at issue in *Padilla*." (Emphasis added.) *Id.* Ironically, the antecedent of the pronoun "it" is not as clear as we would wish now. "It" could refer to section 1101(a)(48)(A), the 410 probation statute, the conclusion that section 410 probation is a conviction under section 1227(a)(2)(B)(i), or simply the trial attorney's overall task in *Carranza-Lamas* of applying all of these statutes to determine what advice he needed to give his client. For our purposes, however, there is no practical difference regardless of how we parse the pertinent pronoun.

businesses. The police searched his home and found ecstasy pills and weapons. The defendant admitted that the pills were his. He was charged with possessing ecstasy with the intent to deliver. His trial attorney advised him that, by pleading guilty, he would receive a lighter sentence than if he went to trial. The attorney also said that he would not be deported as a result of pleading guilty. Based on the advice, the defendant pleaded guilty and was sentenced to prison. *Id.* at ___, 137 S. Ct. at 1962-63. However, it turned out that, under the Immigration Act, his offense subjected him to mandatory deportation. *Id.* at ___, 137 S. Ct. at 1963.

¶ 43    The defendant sought postconviction relief, claiming that his trial attorney had been ineffective. At the hearing on his action, both he and the attorney testified that " 'deportation was the determinative issue in [the defendant's] decision whether to accept the plea.' " The attorney testified that he told the defendant that going to trial was a bad idea because the defense to the charge was weak; however, had he known that the defendant would be deported upon pleading guilty, he would have advised him to go to trial. *Id.* The federal district court denied the defendant relief, holding that, although the attorney had performed deficiently, prejudice had not been proved. This was because the evidence of guilt had been overwhelming so that going to trial would almost certainly have resulted in deportation anyway, plus a longer prison term. *Id.* at ___, 137 S. Ct. at 1964. The appellate court affirmed, explaining that under *Hill*, 474 U.S. at 59, the defendant had been required to prove that, but for the attorney's errors, he would not have pleaded guilty and would have gone to trial instead. *Lee*, 582 U.S. at ___, 137 S. Ct. at 1964; see *United States v. Lee*, 825 F.3d 311, 313 (6th Cir. 2016). But with essentially no defense at all to the charge, the certainty of deportation upon conviction, and the likelihood of a longer prison term, a rational defendant would not have chosen a trial over the guilty plea. *Lee*, 582 U.S. at ___, 137 S. Ct. at 1964; see *Lee*, 825 F.3d at 314.

¶ 44    On appeal, the Supreme Court reversed the judgment and remanded the cause. The Court noted that the *Hill* test is ultimately about the probability that a defendant, had he been properly advised, would have gone to trial rather than plead guilty. Thus, "when the defendant's decision about going to trial turns on his prospects of success and those are affected by the attorney's error," such as failing to move to suppress an improperly obtained confession, he must show that he would have been better off going to trial. *Lee*, 582 U.S. at ___, 137 S. Ct. at 1965. However, the Court explained, in the case before it, the defendant had known that he had little chance of acquittal at trial, and his attorney's error was unrelated to that; instead, the error affected the defendant's understanding of the consequences of his pleading guilty. *Id.*

¶ 45    Thus, the Court concluded, the fundamental issue in the case before it—whether the defendant would have chosen a trial over a guilty plea had he been properly advised—could not be resolved solely on the basis that the defendant had no realistic chance of acquittal or lesser punishment had he gone to trial. After all, the *Hill* inquiry "focuses on a defendant's decisionmaking, which may not turn solely on the likelihood of conviction after trial." *Id.* at ___, 137 S. Ct. at 1966. Theoretically, even had the defendant been fully aware that his chances of acquittal were remote, he might still have elected that distant chance over the certainty of deportation following a guilty plea. *Id.*

¶ 46    The Court cautioned that to decide whether a defendant has proved prejudice, a court "should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Id.* at ___, 137 S. Ct. at 1967. In the "unusual circumstances" before it, the Court held that the defendant

had met his burden of proof. *Id.* Before entering the plea, the defendant had repeatedly asked his attorney whether there was any risk of deportation. At the guilty-plea hearing, the defendant had told the judge that the risk of deportation affected his decision, and he pleaded guilty only after receiving a misleading assurance from the attorney. At the hearing on the postconviction action, both the defendant and the attorney testified that the defendant would have gone to trial had he known the deportation consequences of pleading guilty. The consequences of deportation would have been even more severe than usual, as the defendant had lived in the United States for nearly three decades without returning to South Korea or retaining any ties to the country, had established successful businesses here, and was the only family member in the United States who could care for his elderly parents, who were naturalized citizens. *Id.* at ___, 137 S. Ct. at 1967-68. Thus, it would not have been "irrational" for him to reject the absolute certainty of deportation that would result from a guilty plea and risk the near certainty of deportation that would result from going to trial, especially as the likelihood of a somewhat longer prison sentence in the event of a conviction was far less of a consideration for him. *Id.* at ___, 137 S. Ct. at 1968-69.

¶ 47    We consider *Lee*'s application to this case. We take into account that, in *Lee*, the defendant sought to overcome a judgment that was based on an evidentiary hearing in a completed postconviction proceeding. Here, defendant does not confront a judgment entered after a hearing but need show only that, at the first stage of a postconviction proceeding, he has established the gist of a meritorious claim. The "gist" standard is a low threshold. *People v. Hodges*, 234 Ill. 2d 1, 9 (2009). The petition must provide factual detail sufficient to establish that its allegations are capable of objective or independent corroboration. *Id.* at 10. Nonetheless, the petition need not set forth a complete factual recitation, and it need present only a limited amount of detail. *Id.*; *Edwards*, 197 Ill. 2d at 244.[2]

¶ 48    Given these standards, we hold that the petition sufficiently stated the gist of a meritorious allegation of prejudice under *Lee*. Defendant did not articulate a plausible defense, much less actual innocence.[3] However, according to the petition, when he pleaded guilty, he had been married to a United States citizen for more than six years and had two small children who also lived in the United States. Both he and his wife were employed in the United States and had no desire to move elsewhere. Although defendant's petition gave little other detail about his ties to either the United States or his native Belize, it contained nothing to undermine the inference that the former connections were much stronger than the latter. Thus, we cannot say that the petition's allegation that defendant would have gone to trial, had he known that deportation was certain upon a plea of guilty, was frivolous or patently without merit. At this stage, no more was required.

---

[2]Although the supreme court based these principles on the recognition that most first-stage postconviction petitions are drafted by *pro se* litigants with little legal knowledge or training (see *Hodges*, 234 Ill. 2d at 9), these principles apply equally to first-stage petitions that are drafted by attorneys (*People v. Tate*, 2012 IL 112214, ¶ 12). Thus, that defendant here had the assistance of attorneys in presenting his petition does not affect the requirements for the petition at this stage.

[3]We note that the trial court, having ruled before the Supreme Court issued its opinion in *Lee*, placed decisive weight on the absence of either a claim of actual innocence or a plausible defense. Of course, as our review is *de novo*, the trial court's reliance on pre-*Lee* law is of no consequence.

¶ 49        For the foregoing reasons, we reverse the judgment of the circuit court of Lake County, and we remand the cause for second-stage proceedings under the Act.

¶ 50        Reversed and remanded.